# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1243

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of South Dakota. |
| | * | |
| Days Inns of America, Inc.; | * | |
| Hospitality Franchise Systems, Inc., | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: June 8, 1998
Filed: August 6, 1998

_____

Before FAGG, BRIGHT, and BEAM, Circuit Judges.

_____

BRIGHT, Circuit Judge.

The United States government brought this action against Days Inns of America, Inc. and its former parent company, Hospitality Franchise Systems, Inc. (collectively referred to as "DIA") alleging DIA violated the Americans with Disabilities Act ("ADA") by failing to design and construct facilities at the Days Inn hotel in Wall, South Dakota (hereinafter "Wall Days Inn"), in compliance with accessibility requirements of the ADA. The district court granted summary judgment in favor of

DIA. The district court opined that DIA did not design or construct Wall Days Inn and did not serve as the owner, lessor or operator of the hotel.

On appeal, the government challenges the district court's conclusion regarding whether DIA failed to "design and construct" the Wall Days Inn within the meaning of section 303 of the ADA. In addition, the government asserts that DIA controls and directs the functioning of the Wall Days Inn in several crucial respects and thus constitutes an "operator" of the facility, as required by section 302(a) of the ADA. We conclude that even though DIA does not serve as an "operator" of the Wall Days Inn, DIA may still bear liability under section 303's "design and construct" provision. We remand for further proceedings on this issue.

## I.    BACKGROUND

In 1992, Richard and Karla Hauk ("the Hauks") entered into negotiations with Andy Anderson, a franchise representative for Days Inns of America, Inc., concerning the possibility of opening a Days Inn franchise. Anderson referred the Hauks to an architect, David Baumann, and a building contractor, Double H Enterprises, Inc. Both Baumann and Double H Enterprises had previously participated in the design and building of other Days Inn hotels. The Hauks ultimately retained the services of the recommended architect and building contractor for construction of the Wall Days Inn.

The Hauks entered into a licensing agreement with DIA (hereinafter "Licensing Agreement") on December 12, 1992. Part of the Licensing Agreement required the following from the Hauks relating to design and construction for the hotel: (1) "create a site plan and detailed architectural plans and specifications . . . which must be submitted to DIA"; (2) obtain written approval of the architectural plans from DIA before proceeding; (3) provide written notice to DIA prior to beginning construction; (4) obtain DIA approval of any modifications to the construction plans; and (5) allow DIA to inspect construction while in progress.

The Hauks did not comply with several of the above provisions. First, rather than a detailed set of final architectural plans, the Hauks sent to Mark Zelazny of DIA's design and construction department only four pages of preliminary plans. Second, the Hauks' architect completed the final plans without receiving written approval of the preliminary plans from Zelazny. Finally, the unapproved plans were modified during construction without the approval of DIA.

During the period relevant to this case, DIA had a Planning and Design Standards Manual (PDSM) providing system standards for newly-constructed hotels. The PDSM provided a variety of guidelines and requirements for designing and planning new Days Inn hotels, including a provision requiring the franchisee to ensure ADA compliance.

During the construction of the Wall Days Inn, Anderson twice visited the construction site on behalf of DIA. Representatives of DIA also called the Hauks on several occasions during construction.

## II.     DISCUSSION

### A.     Parties Liable Under Section 303 of the ADA

For the purpose of this appeal only, DIA does not dispute that the Wall Days Inn, as built, fails to meet the "readily accessible" standard of the ADA.[1] The government argues that DIA bears responsibility under section 303(a) of the ADA, which provides in part:

---

[1]According to the government, the absence of an elevator remains the primary feature that makes the Wall Days Inn an inaccessible facility. The ADA provides that unless a facility is two stories or less, the facility must provide an elevator. See 28 C.F.R. pt. 36, App. A, § 4.1.3(5) (1997).

Except as provided in subsection (b) of this section, as applied to public accommodations and commercial facilities, discrimination for purposes of [section 302(a) of the ADA] includes--

(1) <u>a failure to design and construct facilities</u> for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter; . . . .

42 U.S.C. § 12183(a) (emphasis added). Section 303, however, is silent with respect to who is liable under section 303 for a "failure to design and construct" a readily accessible facility. DIA directs the court's attention to section 302(a) of the ADA, which provides in part:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who <u>owns, leases (or leases to), or operates a place of public accommodation</u>.

42 U.S.C. § 12182(a) (emphasis added).

DIA argues that it does not bear liability under section 303 because the reference to section 302(a) in section 303 not only establishes that a failure to design and construct a compliant facility is discrimination, but also clarifies the parties who may be liable. Specifically, DIA maintains that section 302(a) limits the parties liable under section 303 to "any person who owns, leases (or leases to), or operates" a noncompliant facility. <u>See</u> 42 U.S.C. § 12182(a). Moreover, DIA argues that because

it does not own, lease, or operate the Wall Days Inn, it cannot be liable for an ADA violation. We reject DIA's argument.

Courts should interpret statutory language in a manner that gives effect to all terms so as to avoid rendering terms useless. See Moskal v. United States, 498 U.S. 103, 109-110 (1990). We conclude that DIA's proffered interpretation of section 303 would improperly create a gap in coverage that Congress did not intend. Specifically, Congress clearly intended that commercial facilities be subject to the accessibility standards for new construction. See H.R. Rep. No. 101-485(II), at 116 (2d Sess.)(1990) ("the use of the term 'commercial facilities' is designed to cover those structures that are not included within the specific definition of 'public accommodation.'"). However, DIA's reading of sections 302(a) and 303 would limit the parties liable under section 303 to owners, operators, lessors, or lessees of public accommodations. The practical application of DIA's interpretation would leave no entity liable for violations of the new construction accessibility standards for buildings which are commercial facilities only. Accordingly, by rendering meaningless section 303's inclusion of commercial facilities, DIA's interpretation of section 303 would result in an inexplicable gap in coverage of buildings that Congress clearly intended to include.

DIA attempts to remedy the gap in coverage by asserting that courts should import the types of entities liable into section 303 from section 302(a), but the phrase "owns, leases (or leases to), or operates a place of public accommodation" should be interpreted as "owns, leases (or leases to), or operates commercial facilities." See 42 U.S.C. § 12182(a) (emphasis added). In our view, DIA's interpretation violates the maxim of statutory interpretation that courts should give effect to the plain language of the statute. Western Nat'l Mut. Ins. Co. v. Commissioner of Internal Revenue, 65 F.3d 90, 93 (8th Cir. 1995). Accordingly, we reject DIA's position and conclude that section 303's anti-discrimination requirements are not limited to owners, operators, lessors and lessees of newly-constructed facilities.

## B. The Meaning of "Design and Construct" Under Section 303

Having determined that section 303 of the ADA does not apply only to owners, operators, lessors, and lessees of newly-constructed facilities, we must now turn to the question of whether DIA bears responsibility for the failure to "design and construct"[2] the Wall Days Inn in compliance with the ADA.

Because the ADA does not specify a standard for interpreting section 303, we must determine what types of entities are liable for failing to "design and construct" an accessible facility. We note that the Department of Justice (DOJ) has issued a Technical Assistance Manual, which directs that architects and contractors may be liable for failing to design and construct accessible facilities. See The Americans with Disabilities Act, Department of Justice, Technical Assistance Manual § III-5.1000 (Jan. 1993). This DOJ directive supports the government's assertion that any party substantially participating in the design and construction of a facility shares the responsibility if the facility violates ADA's standards.

The Supreme Court has stated that courts should defer to a reasonable interpretation of a statute adopted by the administrative agency charged with its enforcement. Nationsbank of North Carolina, N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256-57 (1995) (citations omitted). Although we adhere to this well-settled rule, the DOJ's interpretation imports some limitation. Clearly, not any party tangentially or remotely connected with the design and construction of a facility sustains liability if the facility is ultimately constructed in violation of the ADA.

---

[2]In the context of this case and DIA, we apply conjunctively the "design and construct" language of section 303. Therefore, in order for DIA to be liable under section 303, DIA must have been responsible for the design and construction of the hotel. See Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Eng'rs, P.C., 945 F. Supp. 1, 2 (D.D.C. 1996).

Recently, in United States v. Bestfoods, 118 S. Ct. 1876 (1998), the Supreme Court considered the issue of liability for a parent corporation under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Although relating to a different federal statute, the Supreme Court's opinion in Bestfoods provides this court with helpful direction.  In Bestfoods, the Supreme Court opined that in order for a parent corporation to be liable for a violation of CERCLA, the parent corporation "must manage, direct, or conduct operations specifically related to" the violation or compliance with CERCLA.  Id. at 1887.

In the present case, to give effect to the plain language of section 303, as well as deference to the DOJ's interpretation of the statute, we conclude that to bear responsibility for an inaccessible facility under section 303, a party must possess a significant degree of control over the final design and construction of a facility.[3]

DIA possessed extensive authority to control the design and construction process.  As stated, the Licensing Agreement required the Hauks to comply with DIA's design and construction standards (which included a requirement that the facility comply with ADA requirements) and permitted DIA to terminate the franchise if the Hauks failed to comply with those standards or with the requirements of the ADA. Moreover, DIA established an elaborate mechanism for enforcing its design and construction standards.  Specifically, DIA required franchisees to submit architectural and design plans for review, to allow inspection of construction sites, to obtain a written certification from DIA that their hotels met the DIA's standards, and to permit DIA to inspect the hotels after they opened for business.  Thus, the Licensing

---

[3]Therefore, a franchisor that does not possess the authority to control the design and construction of franchisee's facility would not risk liability under section 303. Moreover, a franchisor's mere instruction that the franchisee's facility comply with the ADA or some other law would not constitute significant control over the design and construction of the facility.

Agreement provided DIA with a significant amount of authority (power to terminate franchise) which would have enabled DIA to ensure ADA compliance.[4]

Despite having significant authority to control the design and construction process, DIA apparently chose to exercise only a meager portion of its available influence. Although DIA reviewed and approved preliminary design plans, DIA never received or demanded the final plans for the Wall Days Inn. Moreover, the Hauks' architect made final the design plans before receiving DIA's response to the preliminary design plans. Thus, DIA's review of building plans did not play much, if any, factor in the design and construction of the Wall Days Inn. We must therefore determine whether a party, such as DIA, violates section 303 when the party possesses sufficient authority over the design and construction process to ensure ADA compliance, but does not exert this authority.

A franchisor with no knowledge that a franchisee has constructed a facility in violation of the ADA should not suffer liability under section 303, regardless of the franchisor's available authority to ensure ADA compliance. The government has not proffered any persuasive rationale for treating differently a franchisor that has no control over the design and construction of a franchisee's facility and a franchisor with

---

[4]The district court discussed the amount of control DIA possessed in the context of determining whether DIA constituted an "operator" of the Wall Days Inn. We agree that DIA did not serve as an "operator" of the Wall Days Inn. Nevertheless, section 303's "design and construct" provision extends beyond persons or entities that may be operators.

The district court determined that DIA exerted an insignificant amount of control over the design and construction of the Wall Days Inn. However, the district court improperly focused on the amount of control DIA actually exerted rather than the amount of control DIA had available and whether DIA had actual knowledge of the ADA violation.

significant control, but without any knowledge that the franchisee has built a facility in violation of franchise agreements, as well as the ADA.

In the present case, it remains unclear whether DIA had actual knowledge that the Wall Days Inn did not meet ADA requirements. Upon reviewing the preliminary plans sent to DIA, we cannot determine as a matter of law whether the preliminary plans disclosed the ADA violations. Furthermore, we cannot determine from the record whether the actual inspection by Anderson (DIA's representative) of the Wall Days Inn exposed the inaccessible features. Accordingly, we reverse the district court's grant of summary judgment in favor of DIA and remand this case for the district court to determine whether DIA possessed actual knowledge that the final design and construction plans for the Wall Days Inn violated the ADA.

If DIA had such knowledge, it would be liable for the violations inasmuch as it retained ample power to require compliance with the ADA. Without such actual knowledge, however, it would not have "failed to design and construct" the proposed Wall Days Inn in compliance with the accessibility requirements of the ADA.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-