**UNITED STATES of America,
Plaintiff,**

v.

**Andrew GOLTZ, Defendant.**

**No. CR 00–40069.**

United States District Court,
D. South Dakota,
Southern Division.

Feb. 7, 2002.

Robert A. Mandel, United States Attorney's Office, Sioux Falls, SD, for Plaintiff.

Sidney B. Strange, Strange, Farrell & Johnson, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

The defendant, Andrew Goltz, has been charged in an indictment with train wrecking which resulted in the death of a person, in violation of 18 U.S.C. § 1992 (2000). During the defendant's change of plea hearing, the Court informed the defendant that the statutory minimum penalty for this crime is life imprisonment. In response, defense counsel argued that the Court could impose a sentence of less than life imprisonment, and requested an opportunity to brief the issue. After reviewing briefs submitted by both parties and conducting further research on this issue, the Court believes that the penalty provision in 18 U.S.C. § 1992 when death results does not establish a mandatory minimum sentence of life imprisonment. Thus, defendant may be sentenced to a term of imprisonment less than life if he is convicted or pleads guilty to the crime charged and the application of the Sentencing Guidelines in this case provide for such a sentence.

## BACKGROUND

The defendant, Andrew Goltz, admitted to investigators that, on or about August 26, 2000, he tampered with a switch on railroad tracks used by the Dakota, Minnesota and Eastern Railroad in Brookings, South Dakota. According to his statements to law enforcement, the defendant used a hammer to break a lock on the switch, turned the switch, and then used plastic bags and a pizza box to cover up a reflector that would have alerted the operators of an oncoming train to the fact that the switch had been turned. When a west-bound train came along during the early morning hours of August 26, it was diverted onto a sidetrack where it collided with eight stationary rail cars. The train's conductor, Brad Davis, was killed in the collision, and its engineer, Dennis Baum, was seriously injured.

In his statements to investigators on August 29, Goltz described why he turned the switch:

Well, I thought, I thought the train was just going to detour and it was going to shake up the drivers. I really didn't intend to hurt anybody or wreck any of the equipment or anything.

Goltz stated that "it was supposed to be, like, a prank." There is apparently some evidence that Goltz knew the eight cars were parked on the sidetrack.

## DISCUSSION

The defendant was indicted under the federal train wrecking statute, 18 U.S.C. § 1992. An offense under this section is committed by anyone who "willfully derails, disables, or wrecks any train, engine, motor unit, or car used, operated, or employed in interstate or foreign commerce." 18 U.S.C. § 1992(a) (2000). The same statute creates a felony for anyone who "willfully makes any … track, signal, station, … or any other way, structure, property or appurtenance … hazardous to work or use, with the intent to derail, disable, or wreck a train, engine, motor unit, or car used, operated, or employed in interstate or foreign commerce." *Id.* Generally speaking, the term of imprisonment for a violation of § 1992 is limited to "not more than twenty years." *Id.* If the violation results in the death of any person, however, the violator "shall be subject also to the death penalty or to imprisonment for life." 18 U.S.C. § 1992(b) (2000).

The government argues that the penalty provision in § 1992(b) imposes a mandato-

ry minimum sentence of life imprisonment. An evaluation of the language in § 1992(b), however, reveals an ambiguity, which the Court finds must be analyzed in determining whether the defendant must be sentenced to life imprisonment if convicted or if he pleads guilty. The Supreme Court directs that " '[i]n determining the scope of a statute, we look first to its language,' . . . giving the 'words used' their 'ordinary meaning.' " *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (citations omitted). A familiar cannon of statutory interpretation is that "Courts should interpret statutory language in a manner that gives effect to all terms so as to avoid rendering terms useless." *United States v. Days Inns of America, Inc.*, 151 F.3d 822, 825 (8th Cir. 1998), *cert. denied*, 526 U.S. 1016, 119 S.Ct. 1249, 143 L.Ed.2d 346 (1999).

The current version of 18 U.S.C. § 1992 states in full:

(a) Whoever willfully derails, disables, or wrecks any train, engine, motor unit, or car used, operated, or employed in interstate or foreign commerce by any railroad; or

Whoever willfully sets fire to, or places any explosive substance on or near, or undermines any tunnel, bridge, viaduct, trestle, track, signal, station, depot, warehouse, terminal, or any other way, structure, property, or appurtenance used in the operation of any such railroad in interstate or foreign commerce, or otherwise makes any such tunnel, bridge, viaduct, trestle, track, signal, station, depot, warehouse, terminal, or any other way, structure, property, or appurtenance unworkable or unusable or hazardous to work or use, with the intent to derail, disable, or wreck a train, engine, motor unit, or car used, operated, or employed in interstate or foreign commerce; or

Whoever willfully attempts to do any of the aforesaid acts or things -

Shall be fined under this title or imprisoned not more than twenty years, or both.

(b) Whoever is convicted of a violation of subsection (a) that has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life.

18 U.S.C. § 1992 (2000).

*I. Interpreting the phrase "shall be subject also to" in § 1992(b)*

The phrase "shall be *subject also to* " in § 1992(b) is not the typical penalty provision found in various statutes in title 18 of the United States Code. The typical penalty provision in title 18 uses terms such as "shall be *fined* under this title or *imprisoned* for not more than ten years, or both," 18 U.S.C. § 111(b) (2000) (emphasis added), or "shall be *punished by* death or *by* imprisonment for life," 18 U.S.C. § 1111(b) (2000) (emphasis added). In the context of this case, the word "also" is defined as "in addition: as well: besides, too." Webster's Third New International Dictionary Unabridged 62 (1981). The word "also" would be rendered useless in § 1992(b) if the statute is interpreted to impose a mandatory minimum of life imprisonment. The word "also" conveys a sense that "in addition to" other authorized penalties, the sentencing court has the option of imposing a life imprisonment sentence or the death penalty. If a life imprisonment sentence is mandatory, there would be no reason to say the person convicted of the crime is "subject *also* to the death penalty or to imprisonment for life" because there would not be any other options for the sentencing court in addition to the death penalty or life imprisonment. The typical phrase imposing mandatory minimum sentences of life imprisonment in title 18 provide the convicted person "shall be *pun-*

*ished by* death or *by* imprisonment for life," and there is no doubt that the minimum sentence is life imprisonment. *See, e.g.,* 18 U.S.C. §§ 1111(b); 1201(a) (". . . if the death of any person results, shall be *punished by* death or life imprisonment"); 1203(a) (same); 2113(e) (". . . if death results shall be *punished by* death or life imprisonment"). The word "also" is not used in those statutes. The word "also" does have meaning if § 1992(b) is interpreted to mean that in addition to any other authorized penalty, the defendant may be sentenced to death or life imprisonment.

In discussing the meaning of the word "also" in § 1992, the government argues that "[c]onstruing the statute logically would suggest that a person convicted of this statute that resulted in a death could be fined in addition to being imprisoned for life or subject to the death penalty. An illogical interpretation might suggest that the person could be subject to imprisonment for 20 years in addition to the imposition of life imprisonment or the death penalty. The construction that is not supported under any interpretation of this statute is that the defendant in a case resulting in death could be subject to either up to 20 years imprisonment *or* life imprisonment in the case." (Government's Response to Defendant's Brief, Doc. 51.) The construction that the government did not offer is that the words "subject also to" trigger a maximum punishment of death or life imprisonment where the government elects not to seek the death penalty in addition to the fine or imprisonment authorized by the remaining portions of §. 1992, with the ultimate sentence being determined by application of the sentencing guidelines.

The use of the words "subject . . . to" also creates an ambiguity in the context of § 1992. The definition of "subject" in the sense relevant to this case is "suffering a particular liability or exposure." Webster's Third New International Dictionary, *supra,* at 2275. Black's Law Dictionary defines "subjection" as "[t]he condition of being subject, exposed, or liable; liability . . . susceptibility." Black's Law Dictionary Abridged 1156 (7th ed.2000). There is no doubt that pursuant to § 1992, a person convicted of violating § 1992 is "exposed" to life imprisonment and the death penalty, in the sense that both of those penalties are possible sentences. But there is doubt about whether the phrase "subject . . . to" in § 1992 means a person convicted of violating § 1992 *must* be sentenced to life imprisonment or the death penalty. Being "exposed" to a maximum penalty is entirely different from a penalty being the mandatory minimum penalty.

Because of ambiguities create by the phrase "shall be *subject also to* " in § 1992(b), the Court is required to evaluate the "language, structure, legislative history, and motivating policies of the statute," *United States v. Warren,* 149 F.3d 825, 828 (8th Cir.1998), before the rule of lenity urged by the defendant may be invoked. *See Moskal v. United States,* 498 U.S. at 108, 111 S.Ct. 461. Section 1992, among other statutes, was amended in 1994 as part of the Violent Crime Control and Law Enforcement Act of 1994. Sept. 12, 1994, Pub.L.No. 103–322, Title VI, § 60003(a)(8), 108 Stat.1969.[1] The pre–1994 version of § 1992 and the pre–1994 versions of 18 U.S.C. §§ 34 and 1716, two statutes with nearly identical language to § 1992, are helpful in examining the origin

---

1. For ease of reference in this opinion, the Court will cite to this Public Law as "Pub. L.No. 103–322, § _____."

of the phrase "shall be subject also to" in the current version of § 1992.

## II. Pre–1994 versions of 18 U.S.C. §§ 1992, 34 and 1716

Before the 1994 amendment, the relevant portion of § 1992 provided that "[w]hoever is convicted of any such crime, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life, *if the jury shall in its discretion so direct, or, in the case of a plea of guilty, if the court in its discretion shall so order.*" 18 U.S.C. § 1992 (June 25, 1948, c. 645, 62 Stat. 794)[2] (emphasis added) ("the pre–1994 version"). The Court did not locate any legislative history for § 1992 relating to Congressional intent regarding the penalty provision when death results from a violation thereof. The 1994 amendment inserted a period after the phrase "imprisonment for life" and struck the remainder of the sentence, but left the phrase "shall be subject also to the death penalty or to imprisonment for life" unaltered. Pub. L.No. 103–322, § 60003(a)(8).

The penalty provision when death results in § 1992 is nearly identical to at least two other statutes. The first statute is 18 U.S.C. § 34, which currently states, "[w]hoever is convicted of any crime prohibited by this chapter, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life." 18 U.S.C. § 34 (2000). Section 34 is included in the chapter of title 18 that relates to the destruction of aircraft and motor vehicles. This statute was amended in 1994, in a manner identical to § 1992, as part of the Violent Crime Control and Law Enforcement Act of 1994. Pub.L.No. 103–322, § 60003(a)(1). Section

34 was originally enacted in 1956, and it provided "[w]hoever is convicted of any crime prohibited by this chapter, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life, if the jury shall in its discretion so direct, or, in the case of a plea of guilty, or a plea of not guilty where the defendant has waived a trial by jury, if the court in its discretion shall so order." 18 U.S.C. § 34 (Added July 14, 1956, c. 595, § 1, 70 Stat. 540). The 1994 amendment to § 34 inserted a period after the phrase "imprisonment for life" and struck the remainder of the sentence. Pub.L.No. 103–322, § 60003(a)(1).

The legislative history of § 34 states that this statute is "modeled after existing provisions of the Criminal Code (U.S.C., title 18, sec.1992) relating to the wrecking of railroad trains, and the penalties are the same as provided in the train-wrecking statute." H.R.Rep. No.1979 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3145, 3146. The federal law in effect prior to the enactment of § 34 provided for a maximum punishment of 10 years' imprisonment or a $10,000 fine or both, even where death resulted from the prohibited acts. *See id.* While the legislative history includes comments about "increased penalties" and "suitable punishment" where death or injury occurs as a result of the conduct prohibited by this new chapter, there is no indication that Congress intended to impose a mandatory minimum sentence of life imprisonment where death results. *See id.* The statutory language "shall be subject also to" and the language conferring discretion on the jury or the court in certain circumstances to impose a sentence of death or life imprisonment evinced an in-

---

**2.** The original version of § 1992 was adopted in 1940, through ch. 286, 54 Stat. 255, and codified at 18 U.S.C. § 412a. When Title 18 was revised in 1948, § 412a was moved to § 1992, with two minor changes that did not affect the punishment available under the law.

tention to make death or life imprisonment *possible* punishments.

The second statute that has a penalty provision nearly identical to § 1992 is 18 U.S.C. § 1716. The relevant penalty provision of § 1716 currently states, "[w]hoever is convicted of any crime prohibited by this section, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life." 18 U.S.C. § 1716 (2000). This section provides that whoever mails anything declared nonmailable "with the intent to kill or injure another, or injure the mails or other property" is guilty of an offense against the United States. *Id.* The penalty provision relating to the death of any person as a result of a crime prohibited by § 1716 was added to § 1716 in 1957, and it provided "[w]hoever is convicted of any crime prohibited by this section, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life, if the jury shall in its discretion so direct, or, in the case of a plea of guilty, or a plea of not guilty where the defendant has waived a trial by jury, if the court in its discretion shall so order." Sept. 2, 1957, Pub.L.No. 85–268, 71 Stat. 594. Although various other portions of § 1716 were amended between 1957 and 1994, the penalty provision was not amended again until 1994. This section was amended in 1994, in the same manner as §§ 1992 and 34, as part of the Violent Crime Control and Law Enforcement Act of 1994. *See* Pub.L.No. 103–322, § 60003(a)(7). The 1994 amendment inserted a period after the phrase "imprisonment for life" and struck the remainder of the sentence. *See* Pub.L.No. 103–322, § 60003(a)(7).

The 1957 legislative history of § 1716 states that the federal penalty for violating the section, even if death resulted from the commission of the crime, was a fine of not more than $10,000 or imprisonment for 10 years or both. *See* S.Rep. No. 1048 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1856, 1857. It further states "[i]t is therefore proposed to increase the penalties of section 1716 and make them similar to [18 U.S.C. § 34], relating to the destruction of aircraft or motor vehicles by explosive substances." *Id.* The legislative history of 1716, similar to that of § 34, indicates that Congress intended to make the penalties of life imprisonment or death possible sentences, but it does not indicate that Congress intended to make life imprisonment a mandatory minimum sentence where death results from the commission of acts prohibited by § 1716. *See id.* at 1856–61.

In summary, when the penalty provisions for the death of any person as a result of commission of the crimes involved in §§ 34, 1716 and 1992 were adopted, Congress directed that imposition of a penalty of life imprisonment or death could only be imposed in the jury's discretion or in certain cases in the court's discretion. June 25, 1948, c. 645, 62 Stat. 794 (18 U.S.C. § 1992); Sept. 2, 1957, Pub.L.No. 85–268, 71 Stat. 594 (18 U.S.C. § 1716); July 14, 1956, c. 595, § 1, 70 Stat. 540 (18 U.S.C. § 34). Upon reviewing the pre–1994 statutory language and the legislative history of all three statutes, the Court concludes, for two reasons explained below, that 18 U.S.C.1992 as it existed before the 1994 amendments did not impose a mandatory minimum sentence of life imprisonment where death resulted from the commission of the prohibited acts. The first reason is that the "shall be *subject also to* " phrase in each of the statutes indicates that a violator of those statutes is "exposed to" life imprisonment or the death penalty "in addition to" any other penalties provided in the relevant penalty provisions, not that the violator *must* be sentenced to either life imprisonment or death. This statutory language imposes a maximum penalty rather than mandating a

minimum sentence. The interpretation of the phrase "subject also to" is explained above in determining that § 1992 is ambiguous.

The second reason for the Court's conclusion is that life imprisonment or death could only be imposed under these statutes if the jury so directed or in certain cases if the court exercised its discretion to impose life imprisonment or death. The second reason for the Court's conclusion is supported by abundant case law interpreting § 34 before the 1994 amendment as prohibiting the imposition of a life imprisonment sentence without a jury recommendation. *See United States v. Hansen,* 755 F.2d 629 (8th Cir.1985), *cert. denied,* 474 U.S. 834, 106 S.Ct. 105, 88 L.Ed.2d 85 (1985) (called into doubt on other grounds); *United States v. Gullett,* 75 F.3d 941, 948–51 (4th Cir.), *cert. denied,* 519 U.S. 847, 117 S.Ct. 134, 136 L.Ed.2d 83 (1996); *United States v. Prevatte,* 16 F.3d 767, 782–84 (7th Cir.1994); *United States v. Williams,* 775 F.2d 1295, 1299 (5th Cir. 1985), *cert. denied,* 475 U.S. 1089, 106 S.Ct. 1477, 89 L.Ed.2d 732 (1986); *United States v. Ferranti,* 928 F.Supp. 206, 215 (E.D.N.Y.1996), *aff'd,* 135 F.3d 116 (2d Cir. 1998), *cert. denied,* 523 U.S. 1096, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998); *United States v. McFillin,* 487 F.Supp. 1130, 1133 (D.Md.1980). The Court will refer to these cases as "section 34 cases" for ease of reference herein. The section 34 cases support the Court's conclusion because the relevant statutory language in § 34 is identical to the language in § 1992 and the legislative history of § 34 indicates the two statutes' penalties "are the same." *See* H. Rep. No.1979 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3146.

The section 34 cases involve interpretations of § 34 in combination with 18 U.S.C. § 844(i). Until 1994, § 844(i) provided:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000 or both; and if personal injury results shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

18 U.S.C. § 844(i). In 1994, Congress amended this statute by striking the phrase "as provided in section 34 of this title." Pub.L.No. 103–322, § 60003(a)(3)(C). Before the 1994 amendment, the United States District Court for the District of Maryland concluded that "[u]nder the clear meaning of the words used in the combination of sections 844(i) and 34, the defendant may be sentenced by this Court only to 'any terms of years' and not to life imprisonment in the absence of a jury recommendation or a jury waiver by defendant." *McFillin,* 487 F.Supp. at 1133. The Eighth Circuit favorably cited *McFillin* in *Hansen,* 755 F.2d at 631. In *Hansen,* the Eighth Circuit reversed the district court's sentence of life imprisonment of a defendant convicted of violating 18 U.S.C. § 844(i) (prior to the 1994 amendment). *Id.* The Eighth Circuit held:

The discretion of the district court was limited in this case by the statute which provides that life imprisonment may be imposed only if death results from the defendant's actions and if the jury directs the imposition of the sentence. 18 U.S.C. § 844(i) and 34. The record does not reflect that the jury made such a recommendation or even that the trial court offered it an opportunity to do so.

Absent the recommendation of the jury, this sentence was improper and must be vacated. *See United States v. McFillin,* 487 F.Supp. 1130, 1133 (D.Md.1980). *Hansen,* 755 F.2d at 631. Similarly, in cases involving 18 U.S.C. §§ 844(i) and 34, prior to the 1994 amendments, the Seventh and Fifth Circuits held that the sentencing courts erred by imposing life imprisonment sentences without jury recommendations. *See Prevatte,* 16 F.3d at 782–84; *Williams,* 775 F.2d at 1299. Although the section 34 cases involved interpreting the penalty provisions in 18 U.S.C. § 844(i), the core of the decisions relating to the impropriety of imposing a life imprisonment sentence involved interpreting the statutory language in § 34, which is identical to §§ 1992 and 1716. Thus, the section 34 cases are instructive in determining whether § 1992 imposed a mandatory minimum sentence before the 1994 amendment.

The section 34 cases discuss whether the jury "may" impose a sentence of life imprisonment or whether the statute "allows" the jury to impose a life imprisonment sentence. These cases do not state that the jury "must" impose at least life imprisonment or that the jury's only options were life imprisonment or the death penalty. The discussion in these cases demonstrates that the pre–1994 version of § 34 was never interpreted to impose a mandatory minimum of life imprisonment. Because the penalty provisions in the pre–1994 versions of §§ 34 and 1992 were identical, the Eighth Circuit's implicit holding that § 34 did not impose a mandatory minimum sentence of life imprisonment compels the conclusion that the pre–1994 version of § 1992 did not impose a manda-tory minimum sentence of life imprisonment. *See Hansen,* 755 F.2d at 631.

The conclusion above that the pre–1994 version of § 1992 did not impose a mandatory minimum sentence of life imprisonment is contrary to the Ninth Circuit's decision in *United States v. Manning,* 56 F.3d 1188 (9th Cir.1995) that 18 U.S.C. § 1716 imposes a mandatory minimum sentence of life imprisonment.[3] The government relies heavily on the *Manning* decision in arguing that § 1992 imposes a mandatory minimum sentence of life imprisonment. In *Manning,* the Ninth Circuit held that 18 U.S.C. § 1716 "removes all discretion from the sentencing process, vesting the sentencer with only two choices: death or life imprisonment." *Id.* at 1201. The Ninth Circuit invalidated the death penalty under 18 U.S.C. § 1716 in an earlier case and it found in *Manning* that "with the elimination of the death penalty provisions of section 1716, jury 'discretion' is no longer involved" and it leaves "the imposition of a life sentence the only possible sentence." *Id.* Although the *Manning* decision may appear correct at first blush, an in-depth analysis of the rationale and distinctions made therein reveals a basic flaw.

The Ninth Circuit cited three of the section 34 cases mentioned above. *See Manning,* 56 F.3d at 1200–01 (citing *Prevatte,* 16 F.3d at 783; *Hansen,* 755 F.2d at 631; *Williams,* 775 F.2d at 1299[4]). The *Manning* court held that the three section 34 cases were not controlling because those cases were interpreting 18 U.S.C. § 844(i), which explicitly stated that if death results the defendant could be sentenced to "any terms of years." 56 F.3d at 1200–01. Distinguishing § 1716 from sections 844(i) and 34, the Ninth Circuit said

---

**3.** Although decided in 1995, the *Manning* decision interprets 18 U.S.C. § 1716 as it existed prior to the 1994 amendment in Pub.L.No. 103–322, § 60003(a)(7).

**4.** For ease of reference, the Court will refer to these three cases as "the three section 34 cases."

"[w]hat differs about section 1716, however, is that where death results there is no provision at all that allows a judge to give 'any term of years.'" *Manning,* 56 F.3d at 1201. The Ninth Circuit's analysis is flawed.

The flaw in the Ninth Circuit's opinion is that it fails to acknowledge that the core of the three section 34 cases, holding a sentence of life imprisonment was prohibited without a jury recommendation, was the courts' interpretations of § 34. Specifically, those courts were interpreting the language in § 34 that if death results the defendant "shall be subject also to the death penalty or to imprisonment for life, if the jury shall in its discretion so direct . . . ." *See Hansen,* 755 F.2d at 631; *Williams,* 775 F.2d at 1299; *Prevatte,* 16 F.3d at 783. This is the identical language the Ninth circuit was required to interpret in § 1716. *See Manning,* 56 F.3d at 1200. In its attempt to distinguish the three section 34 cases, the Ninth Circuit simply compared the language in §§ 1716 and 844(i) and concluded that because § 844(i)

explicitly allowed a sentence of "any term of years" and § 1716 did not so provide, that the three section 34 cases could not be controlling. *Manning,* 56 F.3d at 1200–01. Although the three section 34 cases facially involve an interpretation of § 844(i), the only method for imposing a sentence of life imprisonment pursuant to § 844(i) is to conclude that such a sentence is authorized by § 34. *See Hansen,* 755 F.2d at 631; *Williams,* 775 F.2d at 1299; *Prevatte,* 16 F.3d at 783. Therefore, the crucial statutory interpretation regarding the imposition of a life imprisonment sentence in the three section 34 cases was of § 34, not § 844(i). In *Manning,* the court improperly compared the language in §§ 1716 and 844(i) to distinguish the three section 34 cases. To determine whether the three section 34 cases were controlling in *Manning,* the Ninth Circuit should have compared the language of §§ 1716 and 34, because the relevant holdings in the three section 34 cases centered on those courts' interpretations of § 34 rather than their interpretations of § 844(i).[5]

5. The relevant portion of § 1716 in effect immediately before the 1994 amendment provided:

> Whoever is convicted of any crime prohibited by this section, which has resulted in the death of any person shall be subject also to the death penalty or to imprisonment for life, if the jury shall in its discretion so direct, or, in the case of a plea of guilty, or a plea of not guilty where the defendant has waived a trial by jury, if the court in its discretion, shall so order.

18 U.S.C. § 1716, August 12, 1958, Pub. L.No. 85–268, 72 Stat. 562.

The version of 18 U.S.C. § 34 in effect immediately prior to the 1994 amendment stated:

> Whoever is convicted of any crime prohibited by this chapter, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life, if the jury shall in its discretion so direct, or, in the case of a plea of guilty, or a plea of not guilty where the defendant has waived a trial by jury, if the court in its discretion shall so order.

18 U.S.C. § 34, July 14, 1956, c. 595, § 1, 70 Stat. 540.

The relevant portion of 18 U.S.C. § 844(i) in effect immediately prior to the 1994 amendment provided:

> . . . and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

18 U.S.C. § 844(i). It is clear from the pre–1994 version of § 844(i) that the only method of imposing a sentence of life imprisonment or death pursuant to § 844(i) was if that sentence was authorized under § 34.

The defendant in the *Manning* case challenged his life sentence imposed pursuant to 18 U.S.C. § 1716, arguing that only a jury could have imposed life imprisonment under that statute. 56 F.3d at 1200. The Ninth Circuit acknowledged that three courts of appeals had ruled "[i]n an analogous situation" that a life sentence could not be imposed

The faulty comparison in the *Manning* decision's analysis led to a conclusion with which this Court cannot agree. The Ninth Circuit concluded that "Section 1716 removes all discretion from the sentencing process, vesting the sentencer with only two choices: death or life imprisonment." 56 F.3d at 1201. Thus, the Ninth Circuit concluded life imprisonment was a mandatory minimum sentence under § 1716. This conclusion is completely contrary to the Eighth, Fifth and Seventh Circuits' interpretations of § 34, which has identical language to § 1716, and also § 1992.[6] *See Hansen,* 755 F.2d at 631; *Williams,* 775 F.2d at 1299; *Prevatte,* 16 F.3d at 783. The Eighth Circuit concluded that "[t]he discretion of the district court was limited in this case by the statute [section 34] which provides that life imprisonment may be imposed only if death results from the defendant's action *and if the jury directs the imposition of the sentence.*" *Id.* (em-

phasis added). Thus, the sentencing court did not have only two choices; rather, the two sentences identified by the Ninth Circuit could *not* be imposed in the absence of the exercise of the jury's discretion to authorize a life imprisonment or death sentence. The jury (or the sentencing court in certain circumstances) possessed discretion under § 34 to determine whether a sentence of life imprisonment or death should be imposed. *See id.* If the jury or the court had discretion to decide whether or not to impose a sentence of life imprisonment under § 34, then it cannot be said that the statute imposed a mandatory minimum sentence of life imprisonment. *See id.* As the Ninth Circuit acknowledged, the relevant language in §§ 1716 and 34 is identical. *Manning,* 56 F.3d at 1200. Because the Ninth Circuit distinguished the three section 34 cases, it did not reconcile its holding, that a sentence of life imprisonment was a mandatory minimum sen-

pursuant to 18 U.S.C. § 844(i) "under the sentencing provisions of 18 U.S.C. § 34," unless a jury recommended that sentence. *Manning,* 56 F.3d at 1200 (citing *Prevatte,* 16 F.3d at 783; *Hansen,* 755 F.2d at 631; *Williams,* 775 F.2d at 1299). Thus, the Ninth Circuit implicitly recognized that § 34 did not impose a mandatory minimum sentence of life imprisonment, as a life imprisonment sentence could *only* be imposed if the jury authorized it. The Ninth Circuit further acknowledged in its opinion that §§ 1716 and 34 are identical. Faced with identical language in §§ 1716 and 34, the Ninth Circuit either had to distinguish the section 34 cases or explain its rationale for disagreeing with the Seventh, Eighth and Fifth Circuit Courts of Appeal to find that a sentence of life imprisonment was the mandatory minimum sentence under § 1716.

Rather than analyzing the three section 34 cases, or attempting to distinguish § 1716 from § 34, the Ninth Circuit sought to distinguish the three cited section 34 cases by directly comparing the statutory language in §§ 844(i) and 1716. In making this comparison, the Ninth Circuit emphasized that § 844(i) has an *express* provision for impris-

onment for "any term of years" but that § 1716 did not have an *express* provision for imprisonment for "any term of years." *Manning,* 56 F.3d at 1200–01. This comparison led the Ninth Circuit to conclude that the section 34 cases were not controlling. Comparing the language of §§ 1716 and 844(i) does *not* take into account that *the* only method for imposing a sentence of life imprisonment or death under § 844(i) is pursuant to § 34. A life imprisonment or death sentence could not be imposed under § 844(i) without a finding that such a sentence was authorized under § 34. Thus, the proper comparison is between the language in §§ 1716 and 34. Sections 1716 and 34 are identical, and the Ninth Circuit did not refute the implicit holdings in the cases decided by the Seventh, Eighth and Fifth Circuit Courts of Appeal that a sentence of life imprisonment is not a mandatory minimum sentence under § 34.

**6.** The Ninth Circuit impliedly recognized that its' interpretation of the language in section 1716 was contrary to the Seventh, Eighth and Fifth Circuits' interpretations of that same language by attempting to distinguish the three section 34 cases. *Manning,* 56 F.3d at 1200–01.

tence under § 1716, with the three section 34 cases implicitly holding that a sentence of life imprisonment was not a mandatory minimum sentence under § 34. For all of the reasons explained above, the Court disagrees with the Ninth Circuit's opinion in *Manning* that 18 U.S.C. § 1716 imposes a mandatory minimum sentence of life imprisonment. Thus, despite the fact that §§ 1992 and 1716 have identical penal language when death results, the Court will not adopt the *Manning* analysis or holding in this case.

The result of the above analysis in the context of sentencing a defendant pursuant to the pre–1994 versions of §§ 1992, 34 and 1716, is the question: if a life imprisonment or death sentence is not authorized by the jury (or the sentencing court in certain circumstances), then what sentence is the sentencing court authorized to impose? The section 34 cases do not contain the answer to the question posed, because in those cases the courts were also interpreting § 844(i), which explicitly authorizes a sentence of "any terms of years." The courts were not required to determine what sentences were authorized pursuant to § 34 in the absence of a jury recommendation of life imprisonment or death. *See Hansen,* 755 F.2d at 631; *Gullett,* 75 F.3d at 948–51; *Prevatte,* 16 F.3d at 782–84; *Williams,* 775 F.2d at 1299; *Ferranti,* 928 F.Supp. at 215; *McFillin,* 487 F.Supp. at 1133. The only opinion this Court is aware of that is directly related to this issue is the Ninth Circuit's decision in *Manning,* 56 F.3d at 1200–01. For the reasons explained above, the Court does not find the *Manning* decision controlling in this case.

Considering the holdings in the section 34 cases, the Court finds that there are at least two plausible interpretations of the pre–1994 version of the penalty provision in § 1992 when death results that differ from the Ninth Circuit's decision. These interpretations revolve around the construction of the phrase "shall be *subject also to*" in § 1992. The first interpretation is that in the absence of a jury recommendation that a life imprisonment or death sentence be imposed, the sentencing court is limited to sentencing a person convicted of violating § 1992, and consequently §§ 34 and 1716, to 20 years' imprisonment and/or a fine. This interpretation does not appear to be consistent with the express congressional intent of punishing convicted persons more harshly when death results from a violation of § 1992. As stated in the legislative history of § 34, which was explicitly modeled after § 1992, there was an intent to "provide penalties in keeping with the gravity of the crime." H.R.Rep. No.1979 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3145. Thus, while this is a plausible interpretation of the statutory language, it does not appear to be consistent with the obvious intent to punish persons convicted of violating § 1992 more harshly when death results than when no one is killed by the crime.

A second interpretation is that the penalty provision of the pre–1994 version of § 1992 imposes a maximum sentence, but the jury must authorize that sentence in its discretion (or the sentencing court must exercise that discretion where there is a plea of guilty). This interpretation would allow the sentencing court to impose a sentence for any term of years up to life imprisonment, but would require a jury recommendation (or exercise of the court's discretion where there is a plea of guilty) to impose life imprisonment or death. This interpretation is consistent with congressional intent to penalize persons more harshly under § 1992 when their criminal conduct results in the death of any other person.

One of the government's arguments for interpreting § 1992 as imposing a manda-

tory minimum sentence is that to interpret it in any other manner would allow the sentencing court to sentence a convicted person to "any term of years," which is not explicitly provided for in § 1992. It is true that § 1992, like §§ 1716 and 34, do not explicitly allow a sentence of "any term of years." The Court also recognizes that many other statutes in title 18 that impose maximum sentences of life imprisonment use the phrase "any term of years." *See, e.g.,* 18 U.S.C. § 1111(b) (2000) ("Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life."); 18 U.S.C. § 844(i) (2000) ("... shall also be subject to imprisonment for any terms of years, or to the death penalty or to life imprisonment"); 18 U.S.C. § 2251(d) ("... shall be punished by death or imprisoned for any term of years or for life."). The absence of the phrase "any term of years" from § 1992, does not automatically prohibit that statute (or §§ 34 and 1716) from being interpreted to impose a maximum sentence. Several statutes imposing maximum sentences do not use the phrase "any term of years." *See, e.g.,* 18 U.S.C. § 111(b) (2000) ("... shall be fined under this title or imprisoned not more than ten years, or both."); 18 U.S.C. § 1112(b) (2000) (same); 18 U.S.C. § 1461 (2000) (same); 18 U.S.C. § 2383 (2000) (same). It is inferred from the statutory language that a person convicted under statutes similar to §§ 111, 1112, 1461 and 2383 may be sentenced to any term of years up to the prescribed maximum number of years even though Congress did not explicitly say that person can be imprisoned for "any term of years" up to ten years. Thus, while Congress did not explicitly state in § 1992 that a sentence of "any term of years" up to life imprisonment may be imposed, that authorization can be inferred from the statutory language just as it is in 18 U.S.C. §§ 111(b), 1112(b), 1461 and 2383.

Given the above discussion, at the very least, the question of what sentencing options were available under the pre–1994 version of the penalty provision in § 1992 where death results leaves a " 'grievous ambiguity or uncertainty in the language and structure' of the statute." *Warren,* 149 F.3d at 828 (quoting *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974)). The Court is not necessarily required to resolve in this case the question of what sentencing options were available under the pre–1994 version of § 1992. But the above discussion of the pre–1994 versions of §§ 34, 1716 and 1992 provides guidance for the Court in determining whether the current version of § 1992 imposes a mandatory minimum sentence of life imprisonment and whether the ambiguity discussed above was resolved by the 1994 amendments.

### III. 1994 Amendments

The Court concluded above through an analysis of the section 34 cases, the legislative history and the statutory language that the penalty provisions in §§ 34, 1716 and 1992 did not impose mandatory minimum penalties of life imprisonment before the 1994 amendments. When § 1992, like §§ 34 and 1716, were amended in 1994, Congress eliminated the phrase "if the jury shall in its discretion so direct, or, in the case of a plea of guilty, or a plead of not guilty where the defendant has waived a trial by jury, if the court in its discretion, shall so order." Pub.L.No. 103–322, § 60003(a)(1), (7) and (8). Thus, the questions before the Court at this juncture regarding the 1994 amendments in Pub. L.No. 103–322 are: (1) whether Congress intended to change the penalties in §§ 34, 1716 and 1992 to mandatory minimum sentences of life imprisonment in passing Pub. L.No. 103–322; and (2) whether Congress resolved the ambiguity in the pre–1994

version of § 1992 as to what punishment the sentencing court may impose when death results from a violation of that statute.

In considering these questions, the Court finds it significant that Congress did not eliminate the phrase "shall be *subject also to*" in amending these statutes in 1994. Congress did not explicitly direct that life imprisonment was a mandatory minimum sentence under these statutes. The Court also finds it significant that in the same section of Pub.L.No. 103–322 that amends §§ 34, 1716 and 1992, Congress repeatedly utilized the phrases "shall be *punished by* death or life imprisonment," or "shall be *sentenced to* imprisonment for life" in the penalty provisions of several other criminal statutes, in which life imprisonment is unequivocally the mandatory minimum sentence. *See* Pub. L.No. 103–322, § 60003(a)(4), (5), (6), (9), (10), (11), and (14). But Congress did not alter the "shall be *subject also to*" language in §§ 34, 1716 and 1992. Congress did not amend §§ 34, 1716 and 1992 to say that when death results a person being sentenced pursuant to those statutes "shall be *punished by*" or "shall be *sentenced to*" death or life imprisonment. In addition, in the same 1994 legislation, Congress added at least one penalty provision entitled "Mandatory Life Imprisonment for Persons Convicted of Certain Felonies," which explicitly prescribes life imprisonment as a mandatory minimum penalty if certain elements are met. *See* Sept. 13, 1994, Pub.L.No. 103–322, Title VII, § 70001(2). The above discussion demonstrates that Congress clearly had the ability, the will and the intent to create and amend statutes to impose mandatory minimum penalties of life imprisonment.

In researching the legislative history of the 1994 amendments to determine whether Congress intended to impose a mandatory minimum penalty under § 1992, the Court consulted a publication entitled The Omnibus Anti–Crime Act: A Legislative History of the Violent Crime Control and Law Enforcement Act of 1994, Public Law 103–322, September 13, 1994, authored by Bernard D. Reams, Jr. and published in 1997 by the William S. Hein & Co., Inc.[7] This publication, consisting of twenty volumes, includes a committee report on the bill proposing the amendments to §§ 34, 1716 and 1992, among other statutes, that were ultimately enacted. Volume five of this publication contains a committee report identified as document number 32 and entitled "Death Penalty for Certain Crimes; Judiciary Committee Report, H. Rept. 103–466, to accompany H.R. 4032, House of Representatives, 103d Congress, 2d Session (March 25, 1994)." The "Summary and Purpose" section of this committee report states:

> The purpose of H.R. 4032 is to provide retributive punishment for offenders who commit heinous Federal crimes and to deter the commission of such future crimes. At the same time, it necessarily is not intended to extend the death penalty beyond the reaches of sound policy and constitutionality. The bill authorizes the death penalty for those serious Federal offenses for which capital punishment may be appropriate such as espionage, treason, terrorist killings, drug-related killings and others.

Reams, Vol. 5, Doc. 32 at 11. The "Background" section of the committee report indicates that the primary focus of the amendments to title 18 contained in the bill at issue was to provide the penalty of

---

7. For ease of reference, this publication will be cited in this opinion as "Reams, Vol. ___, Doc. ___, at _____." The Court borrowed this

publication from the Tenth Circuit Court of Appeals.

death for certain crimes. Reams, Vol. 5, Doc. 32 at 12–13. The "Background" section does not indicate that Congress was seeking to make life imprisonment a mandatory minimum sentence for all crimes being considered.[8] *See id.* Rather, the expressed intent was to make the death penalty an option for sentencing persons convicted · of certain crimes, including §§ 34, 1716 and 1992. *See id.* The "Sec-

8. The "Background" section of the committee report states in full:

> Current Federal law authorizes the death penalty for a number of Federal offenses. For most of these offenses, however, the death penalty is unenforceable because of a lack of constitutional procedures for its implementation consistent with decisions of the United States Supreme Court since *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). That case found that the death penalty was being applied in an unconstitutionally arbitrary fashion and effectively abolished it until constitutional procedures were adopted by the States and the Federal government. To make the death penalty effective for Federal offenses once again, this bill is accompanied by the companion bill, H.R. 4035, which consists of Federal procedures for the constitutional imposition of a Federal death sentence. H.R. 4032 retains the death penalty for every offense for which that sentence is currently authorized. H.R. 4032 also authorizes capital punishment for many other offenses and creates several new criminal offenses for which the death penalty is permitted.
>
> H.R. 4032 authorizes the death penalty for three non-homicidal offenses. They are: espionage, treason, and drug trafficking by kingpins who traffic in very large amounts of controlled substances or who make very large amounts of money through the course of drug trafficking and for drug kingpins who attempt to murder or order the murder of public officers, jurors, witnesses, or their families. The definition of who qualifies as a kingpin is based on present law and the amounts of drugs or money required are double the amounts that under present law mandate a sentence of life imprisonment.
>
> The remainder of the offenses for which this legislation authorizes capital punishment are those in which a death results. To be eligible for the death penalty, the defendant must have intentionally killed the victim, intentionally inflicted serious bodily injury resulting in the victim's death, intentionally participated in an act contemplating that a person's life would be taken and the victim died as a result, or intentionally engaged in an act of violence when such participation constituted reckless disregard for human life and the victim died as a result of the conduct. The intentional participation and "reckless disregard for human life" standards stem from the Supreme Court's holdings in the cases of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). ·
>
> The Committee understands these cases to hold that under certain particularly heinous circumstances, the Constitution permits the application of the death penalty where the defendant acted with a state of mind short of an intent to kill or in circumstances where an intent to kill can be imputed to the defendant. These circumstances can include situations in which the defendant intentionally and substantially participated in actions that resulted in a death and where the defendant's participation in an act of violence constituted extreme reckless indifference for human life. The Committee believes that the reckless indifference standard is appropriate, on both · policy and constitutional grounds, when a defendant may not necessarily have had an actual intent to kill, but engaged in an act of violence that manifested an extreme and reckless indifference for human life and resulted in death. The following is a list of offenses for which the bill authorizes the death penalty:
>
> .   .   .   .   .
>
> Mailing injurious articles where death results, 18 U.S.C. 1716.
> Wrecking trains where death results, 18 U.S.C.1992
>
> .   .   .   .   .
>
> Destruction of aircraft or aircraft facilities resulting in death, 18 U.S.C. 34.
> Destruction of motor vehicle or motor vehicle facilities resulting in death, 18 U.S.C. 34.
>
> .   .   .   .   .
>
> Reams, Vol. 5, Doc. 32 at 12–14.

tion–by–Section Analysis" portion of the committee report states that "Section 2(a)(6) amends section 1992 of title 18, United States Code, to strike an obsolete and unconstitutional procedure and thereby incorporate the new procedures for imposition of the death penalty for wrecking trains where death results." Reams, Vol. 5, Doc. 32 at 14. Similar explanations were given for the amendments to §§ 34, 1716 and 844(i). *See id.* at 14–15. The Court did not locate any additional legislative history regarding the specific amendments to §§ 34, 1716 and 1992 made by Pub.L.No. 103–322 that would further explain Congressional intent beyond the language of the 1994 legislation itself.

While it is true that §§ 1992, 1716 and 34, as amended in 1994, do not explicitly state that a sentencing court may impose a sentence of "any term of years" less than life imprisonment, those statutes also do not explicitly state that life imprisonment is the mandatory minimum sentence. Comparing the penalty provision of 18 U.S.C. § 1111, that felony murder is punished "by death or by imprisonment for life," with the penalty for second degree murder of imprisonment "for any term of years or for life," the government argues that "[i]t is clear that Congress has the ability to create sentences that use life imprisonment as a maximum but allow for lesser sentences. Congress did not choose to do so in the case of violations of 18 U.S.C. § 1992 where death results." (Government's Response to Defendant's Brief Re: Penalty Section of 18 U.S.C. § 1992, Doc. 51, ¶ 7.) The Court does not adopt this argument, however, because, as explained briefly above, it is equally clear that Congress has the ability to explicitly create a mandatory minimum sentence of life imprisonment. *See, e.g.,* 18 U.S.C. § 1111(b) (2000) ("Whoever is guilty of murder in the first degree shall be *punished by* death or by imprisonment for life"); 18 U.S.C. § 1201(a) (2000) (whoever

commits the crime of kidnaping "if the death of any person results, shall be *punished by* death or life imprisonment."); 18 U.S.C. § 2113(e) (2000) (in the bank robbery and incidental crimes statute "if death results shall be *punished by* death or life imprisonment."). All of the cited statutes imposing mandatory minimum life imprisonment sentences were amended in the same 1994 legislation that amended §§ 34, 1716 and 1992. *See* Pub.L.No. 103–322, § 60003(a)(4), (6), (9), (10), (11) (amending 18 U.S.C. §§ 1111(b), 1201(a), 2113(e), 1203(a), 1958). Congress did not alter the "shall be subject also to" language in §§ 34, 1716 and 1992 in the wake of at least two circuit courts of appeals' decisions implicitly holding that § 34 did not impose a mandatory minimum sentence of life imprisonment. *See Hansen,* 755 F.2d at 631 (a sentence of life imprisonment for a violation of 18 U.S.C. § 844(i) where death results can only be imposed if the jury directs the imposition of that sentence under 18 U.S.C. § 34); *Williams,* 775 F.2d at 1299 (same). In addition, in the same 1994 legislation, Congress added at least one penalty provision entitled "Mandatory Life Imprisonment for Persons Convicted of Certain Felonies," which explicitly imposes life imprisonment as a mandatory penalty if certain elements are met. *See* Pub.L.No. 103–322, Title VII, § 70001(2). Congress clearly knew how to explicitly impose a mandatory minimum penalty of life imprisonment, but Congress failed to explicitly impose that punishment in the 1994 amendments to § 1992.

■  After evaluating all of the above discussion regarding both the pre–1994 version of §§ 1992, 34 and 1716 and the 1994 amendments to these statutes, the Court is convinced that the phrase "shall be *subject also to*" in § 1992(b) does not impose a mandatory minimum sentence of life imprisonment.

## IV. Rule of Lenity

Even if the Court's interpretation of § 1992(b) is not accepted, at the very least, the above discussion demonstrates that there is a " 'grievous ambiguity or uncertainty in the language and structure' " of 18 U.S.C. § 1992(b), requiring the Court to invoke the rule of lenity in this case. *Warren*, 149 F.3d at 828 (quoting *Huddleston*, 415 U.S. at 831, 94 S.Ct. 1262). The Eighth Circuit explained that "[t]he rule of lenity is a rule of narrow construction 'rooted in the concern of the law for individual rights, and in the belief that fair warning should be accorded as to what conduct is criminal and punishable by deprivation of liberty or property.' " *Id.* "Although penal laws are to be construed strictly, they should not be construed so strictly as to defeat the obvious intention of the legislature." *Id.* Strictly construing § 1992(b) to allow a sentence of death or imprisonment for any term of years up to and including life does not defeat the obvious intention of the legislature as is explained above in the discussion of the pre–1994 version of § 1992 and the current version of § 1992(b). Rather, this construction permits a person to be punished more harshly when death results from a violation of § 1992 than if death does not result, which is the obvious intention of Congress.

When Congress amended § 1992 in 1994, the United States Sentencing Guidelines were in effect and Congress knew that a defendant convicted of violating § 1992 would be sentenced pursuant to those guidelines. The guidelines set forth a base offense level of 43 for first degree murder and other unnamed felonies which result in death. *See* U.S.S.G. § 2A1.1, comment. (n. 1). The guideline range for an offense level of 43 is life imprisonment, regardless of criminal history. Depending upon a defendant's criminal history, however, various reductions, including accep-

tance of responsibility, and departures may result in a lower offense level that does not require a sentence of life imprisonment. Even if a defendant with a base offense level of 43 receives a three-level reduction for acceptance of responsibility, his guideline range with a criminal history category I would be 292 to 365 months' imprisonment, which is greater than the maximum 20 years' imprisonment under § 1992(a) where there is not a death. A criminal history category III or higher would result in a guideline range of 360 months to life. Given the base offense level of 43 and the virtual certainty of a violator of § 1992(b) being imprisoned for substantially more than 20 years, the congressional intent of punishing violators of § 1992 more harshly when death results is fulfilled by the application of the sentencing guidelines.

The Court recognizes that "[l]enity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language, structure, legislative history, and motivating policies of the statute." *Warren*, 149 F.3d at 828. The Court concluded above that § 1992(b) does not impose a mandatory minimum sentence of life imprisonment after resorting to all of the required sources for determining the intended punishment under § 1992, including the relevant prior versions of § 1992 and identical statutes, the legislative history of those statutes and case law interpreting those versions. Even if the Court's interpretation of § 1992(b) is not accepted, there is no question that there is a " 'grievous ambiguity or uncertainty in the language and structure' " of 18 U.S.C. § 1992(b). *Warren*, 149 F.3d at 828. Moreover, the above discussion demonstrates that, at the very least, a reasonable doubt persists about the intended punishment under § 1992(b). "[T]he rule of lenity generally requires that doubts be re-

solved in favor of a defendant where there is ambiguity in a criminal statute." *Warren*, 149 F.3d at 828; *see United States v. Oetken*, 241 F.3d 1057, 1059 (8th Cir.2001) ("where there are two plausible readings of a guideline provision, we apply the rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence.").

Applying the rule of lenity in this case and resolving any doubts in favor of the defendant, leads the Court to conclude that 18 U.S.C. § 1992(b) imposes a maximum sentence of death, but does not impose a mandatory minimum sentence of life imprisonment. In this case, the government filed a notice of intention not to seek the death penalty. *See* 18 U.S.C. § 3593. Thus, the maximum punishment under § 1992(b) in this case is life imprisonment. The actual sentence to be imposed against the defendant if he pleads guilty or is convicted of violating § 1992 will be determined by the Court's application of the sentencing guidelines, rather than being a mandatory sentence of life imprisonment.

### CONCLUSION

The Court concludes that 18 U.S.C. § 1992(b) does not impose a mandatory minimum sentence of life imprisonment in this case. If the defendant pleads guilty to the Superseding Indictment, the Court will allow the defendant to withdraw his guilty plea and proceed to trial if the government appeals this ruling and it is determined by an appeal that § 1992(b) imposes a mandatory minimum sentence of life imprisonment. Accordingly,

IT IS ORDERED:

(1) that the defendant's change of plea hearing shall be continued on March 4, 2002 at 9:00 a.m.

(2) that the defendant may notify the Court and the Government prior to the change of plea hearing if he no longer wishes to plead guilty to the Superseding Indictment.

(3) that, if the defendant does not plead guilty by March 4, 2002, the jury trial herein shall commence in Sioux Falls, South Dakota, on Wednesday, April 3, 2002, with counsel to be present for motions in limine at 9:00 a.m., and with the jury to report at 9:30 a.m.